UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___5/8/2019___
```

-------------------------------------------------------------X

IN RE LEHMAN BROTHERS HOLDINGS INC.

-------------------------------------------------------------X

:
:
:

18-CV-8986-VEC
18-CV-9006-VEC
18-CV-9176-VEC
18-MC-392-VEC

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

     Lehman Brothers Holdings Inc. and its affiliates (collectively, "LBHI"), debtors in a Chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, brought adversary proceedings against more than 100 Defendants, seeking indemnification for losses relating to the purchase and sale of mortgage-backed securities. Approximately 70 of those Defendants (collectively, the "Movants") filed motions to dismiss for lack of subject-matter jurisdiction and venue. The Bankruptcy Court denied the motions in an order dated August 13, 2018 (the "Order"). *See* Order, Case No. 18-CV-8986, Dkt. 3, Ex. 1, *available at* No. 08-13555, 2018 WL 3869606 (Bankr. S.D.N.Y. Aug. 13, 2018).

     The Movants seek leave to appeal the Bankruptcy Court's Order, pursuant to 28 U.S.C. § 158(a)(3). In the alternative, all but a handful of the Movants ask this Court to treat the Order as proposed findings of fact and conclusions of law and to subject the Order to an immediate *de novo* review, pursuant to 28 U.S.C. § 157(c)(1). For the following reasons, the motions are DENIED.

# BACKGROUND[1]

LBHI was once one of the largest investment banks in the country.  *See* LBHI's Appeal Mem. of Law at 5.  For years, LBHI was in the business of buying mortgage loans, packaging them into securities, and selling the securities to investors.  *See* Order at 3.  In a story familiar to many, the bank collapsed during the 2008 financial crisis and thereafter commenced one of the largest bankruptcy proceedings in U.S. history.  *See id.* at 4; LBHI Appeal Mem. of Law at 5.

Prior to its collapse, LBHI purchased mortgage loans from the Movants, who were loan originators and sellers, securitized those loans, and sold the securities to two government-sponsored enterprises ("GSEs"), the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac").[2]  *See* Order at 3–4.  In selling the loans to LBHI, the Movants made a number of representations, including representations that

---

[1]     The Movants filed multiple motions for leave to appeal the Order.  *See* Case Nos. 18-CV-8986, 18-CV-9006, 18-CV-9176.  The Court consolidated those motions onto a single docket, Case No. 18-CV-8986.  The motion to subject the Order to a *de novo* review has been docketed separately.  *See* Case No. 18-MC-392.

 The Movants submitted several memoranda of law in support of their various motions for leave to appeal, but all of the memoranda are substantively identical (with the exception that some Movants moved for leave to appeal only on grounds of venue, whereas others moved for leave to appeal both venue and subject-matter jurisdiction).  *See* Case No. 18-CV-8986, Dkts. 3, 15, 22, 25.  For ease of reference, the Court will address the Movants' arguments by citing to the memorandum of law filed at Dkt. 22 of Case No. 18-CV-8986.  The Court will refer to this submission as "Movants' Appeal Mem. of Law."  The Court will refer to LBHI's memorandum of law in opposition to the Movants' motions for leave to appeal, Case No. 18-CV-8986, Dkt. 35, as "LBHI's Appeal Mem. of Law."  All of the Movants filed a single, joint reply memorandum of law in further support of their motions for leave to appeal, Case No. 18-CV-8986, Dkt. 45, which the Court will refer to as "Movants' Appeal Reply Mem. of Law."

Although a handful of the Movants did not move for a *de novo* review of the Order, the Court will refer to the parties who filed that motion also as the "Movants," for ease of reference.  The Court will refer to the Movants' memorandum of law in support of their motion for a *de novo* review, Case No. 18-MC-392, Dkt. 4, as "Movants' De Novo Mem. of Law."  The Court will refer to LBHI's memorandum of law in opposition to this motion, Case No. 18-MC-392, Dkt. 21, as "LBHI's De Novo Mem. of Law."  The Court will refer to the Movants' reply memorandum of law in further support of this motion, Case No. 18-MC-392, Dkt. 24, as "Movants' Reply De Novo Mem. of Law."

[2]     To be precise, an entity called Lehman Brothers Bank, FSB ("LBB") purchased the loans.  *See* Order at 3.  The Court will refer to all Lehman Brothers affiliates simply as "LBHI," as the distinction among them is not material to this opinion.

the loans complied with various underwriting standards and applicable laws. *See id.* at 4. The Movants also agreed to indemnify LBHI for any losses arising out of breaches of the Movants' representations. *See id.* LBHI, in turn, made substantially similar representations to the GSEs when selling them the mortgage-backed securities. *See id.* at 4–5. LBHI agreed to indemnify the GSEs for any breaches of these representations. *See id.*

In September 2008, LBHI filed voluntary Chapter 11 petitions in the Bankruptcy Court. *See id.* at 4. In September 2009, the GSEs filed proofs of claim against LBHI, asserting that LBHI had breached its representations and was required to indemnify the GSEs for their mortgage-backed-security-related losses. *See id.* On December 6, 2011, the Bankruptcy Court confirmed LBHI's plan of liquidation (the "Plan").[3] *See id.* at 5. Two years later, the GSEs settled their claims against LBHI. *See id.* Pursuant to the settlements, Fannie Mae received an allowed claim against LBHI for $2.15 billion, and Freddie Mac received an allowed claim against LBHI for $767 million. *See id.*

Shortly thereafter, LBHI commenced adversary proceedings against more than 100 loan sellers, including the Movants. *See id.* at 6. LBHI alleged that those entities breached their representations when selling LBHI mortgage loans and, consequently, that they were required to indemnify LBHI for the GSEs' claims. *See id.* Although LBHI brought each of these claims as a separate adversary proceeding, the Bankruptcy Court put them all on a single, coordinated schedule for motions and other pretrial matters. *See id.* at 3 n.2, 6.

The Movants, approximately 70 of the 100-plus sellers that LBHI sued for indemnification, moved to dismiss LBHI's claims for lack of subject-matter jurisdiction and

---

[3]       The Plan is entitled "Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors" and is available at Case No. 18-MC-392, Dkt. 22, Ex. B. The order confirming it is available at Case No. 18-MC-392, Dkt. 22, Ex. A.

venue.  *See id.* at 6–7; *see id.* Ex. A (list of Defendants who filed motions to dismiss).  Following

the Bankruptcy Court's denial of those motions, the Movants filed the motions currently pending

before this Court.

## DISCUSSION

**I.     The Motions for Leave to Appeal the Bankruptcy Court's Order Are Denied**

**A.     Standard of Review**

A bankruptcy court order denying a motion to dismiss is not a "final" order from which a

party may ordinarily appeal.  *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d

748, 755–56 (2d Cir. 1998); *N. Fork Bank v. Abelson*, 207 B.R. 382, 389 (E.D.N.Y. 1997); *In re

FYM Clinical Lab., Inc.*, No. 95-CV-4656, 1994 WL 665960, at *1–2 (S.D.N.Y. Nov. 28, 1994).

In order to appeal such an order, the appellant must first obtain the district court's leave.  *See* 28

U.S.C. § 158(a)(3).  To determine whether leave to appeal is appropriate, district courts apply the

standard set forth in 28 U.S.C. § 1292(b).  *See Hometrust Mortg. Co. v. Lehman Bros. Holdings*,

No. 15-CV-4060, 2015 WL 5674899, at *2 (S.D.N.Y. Sept. 25, 2015); *In re Fairfield Sentry Ltd.

Litig.*, 458 B.R. 665, 672–73 (S.D.N.Y. 2011).  That statute provides that leave to appeal should

be granted only if (1) the appeal "involves a controlling question of law," (2) "as to which there

is substantial ground for difference of opinion," and (3) "an immediate appeal from the order

may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also

In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529–30 (S.D.N.Y.

2014).  The party seeking leave to appeal bears the burden of demonstrating that all three criteria

have been met.  *In re Facebook*, 986 F. Supp. 2d at 529.

As to the first criterion, a case involves a "controlling question of law" if reversal of the

bankruptcy court's ruling could "result in dismissal of the action"; if reversal could "significantly

affect the conduct of the action"; or if the issue on appeal "has precedential value for a large number of cases." *In re Facebook*, 986 F. Supp. 2d at 536 (quoting *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)).  A "controlling question" must be "a 'pure' question of law that the reviewing court 'could decide quickly and cleanly without having to study the record.'"  *Id.* (quoting *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)).  As to the second criterion, a "substantial ground for difference of opinion" exists where "there is conflicting authority on the issue" or where "the issue is particularly difficult and of first impression in the Second Circuit."  *Hometrust*, 2015 WL 5674899, at *2 (quoting *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)).  As to the third criterion, an appeal "advance[s] the ultimate termination of the litigation" if the appeal promises to "advance the time for trial."  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)).

Even when all three criteria are met, a district court retains "unfettered discretion" to deny leave to appeal for "any reason," including judicial economy.  *In re Facebook*, 986 F. Supp. 2d at 530 (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).  As a general rule, interlocutory appeals are "disfavored" in the federal system.  *Id.*  They should be "strictly reserved for exceptional cases," and they are "especially rare in early stages of litigation."  *Id.* at 533 (collecting cases); *see also In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010).

5

**B.      Leave to Appeal the Bankruptcy Court's Ruling as to Subject-Matter Jurisdiction Is Denied**

The Bankruptcy Court's ruling as to subject-matter jurisdiction does not provide a "substantial ground for difference of opinion," as is required for leave to appeal.  28 U.S.C. § 1292(b).  Thus, leave to appeal is not appropriate here, regardless of whether the other two § 1292(b) criteria have been met.

**1.      The Applicable Law**

The federal courts have subject-matter jurisdiction over all claims "arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]."  28 U.S.C. § 1334(b).  As to those claims "related to" bankruptcy proceedings, whether the federal courts have subject-matter jurisdiction depends, in part, on whether the claims were filed before or after the time that the bankruptcy court confirmed the applicable bankruptcy plan.  *See In re Residential Capital, LLC*, 519 B.R. 593, 599–600 (S.D.N.Y. 2014) (hereinafter *ResCap I*); *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 441–42 (S.D.N.Y. 2008).

As to claims filed prior to plan confirmation, the scope of federal subject-matter jurisdiction is broad.  Federal courts have "related to" jurisdiction over such a claim "if the action's outcome might have any conceivable effect on the bankrupt estate."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018); *see also Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011); *ResCap I*, 519 B.R. at 599; *In re Refco*, 628 F. Supp. 2d at 441.  A case has a "conceivable effect" on an estate if its outcome "could alter the debtor's rights, liabilities, options, or freedom of action" or could in any way have an "impact[] upon the handling and administration of the bankrupt estate."  *SPV Osus Ltd.*, 882 F.3d at 340 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995)).

As to claims filed after plan confirmation, some courts apply a narrower "close nexus test" to determine whether "related to" jurisdiction exists.  Courts are split, however, over whether to apply the "conceivable effects" or the "close nexus" test in the post-confirmation context.  *See ResCap I*, 519 B.R. at 599–600 & n.3 (explaining the split in authority); *Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11-CV-1927, 2012 WL 967582, at *5 (S.D.N.Y. Mar. 13, 2012) (same); *In re Refco*, 628 F. Supp. 2d at 441–43 (same).  The Second Circuit has not, in a precedential opinion, decided which of these tests applies.  *Cf. In re DPH Holdings Corp.*, 448 F. App'x 134, 137 (2d Cir. 2011) (applying, in a non-precedential opinion, the "close nexus" test post-confirmation).[4]

The "close nexus" test has two requirements:  first, the case must "affect[] the interpretation, implementation, consummation, execution or administration of the confirmed plan," and second, the bankruptcy plan "must provide for the retention of jurisdiction over the dispute."  *Savoy Senior Hous. Corp. v. TRBC Ministries, LLC*, 401 B.R. 589, 597 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also ResCap I*, 519 B.R. at 600; *In re Kassover*, 448 B.R. 625, 632–33 (S.D.N.Y. 2011); *Krys v. Sugrue*, No. 08-CV-3065, 2008 WL 4700920, at *6 (S.D.N.Y. Oct. 23, 2008); *In re Refco*, 628 F. Supp. 2d at 442–43; *In re Gen. Media, Inc.*, 335 B.R. 66, 73–74 (Bankr. S.D.N.Y. 2005).  Courts in this District have generally found that the

---

[4]        Those courts that apply the narrower "close nexus" test have reasoned that federal jurisdiction should "shrink[]" following plan confirmation.  *In re Refco*, 628 F. Supp. 2d at 441.  In these courts' view, confirmation of a bankruptcy plan "emancipate[s]" the debtor and, if the debtor is reorganized or restructured, allows it to begin its life anew.  *Id.*  Accordingly, these courts reason, the scope of federal jurisdiction should narrow post-confirmation, in order to force the debtor to "protect its interests . . . in the way provided by the applicable non-bankruptcy" rules, that is, "just like any other corporation . . . without any special swaddling."  *Id.*; *see also, e.g.*, *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005); *Guccione v. Bell*, No. 06-CV-492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006).

Because the rationale for a narrower jurisdictional test post-confirmation applies primarily to reorganized debtors, some courts have held that the "close nexus" test should not apply when a bankruptcy plan calls for the debtor's liquidation.  *See, e.g.*, *In re Boston Reg'l Med. Ctr.*, 410 F.3d at 106; *In re Refco*, 628 F. Supp. 2d at 442–43.

first part of the "close nexus" test was satisfied when adjudication of the case directly affected

distributions to creditors under the bankruptcy plan or when the claim required interpretation of

the terms of the plan.  *See In re Kassover*, 448 B.R. at 632 & n.70 (collecting cases); *see also,*

*e.g.*, *ResCap I*, 519 B.R. at 600; *In re Refco*, 628 F. Supp. 2d at 443; *Krys*, 2008 WL 4700920, at

*6.  On the other hand, courts have found that this part of the test was not satisfied when an

estate had been fully liquidated, such that "the interest of creditors [would have been] unaffected

by the resolution of the dispute."  *In re Kassover*, 448 B.R. at 632–33 & n.71; *see also, e.g.*,

*Allstate*, 2012 WL 967582, at *5; *In re Gen. Media, Inc.*, 335 B.R. at 74–75.

### 2.    The Bankruptcy Court's Ruling

The Bankruptcy Court denied the Movants' motions to dismiss for lack of subject-matter

jurisdiction.  *See* Order at 7–20.  Acknowledging the split in authority between the "conceivable

effect" and "close nexus" tests, the Bankruptcy Court found that it did not need to resolve which

test applied because LBHI's claims satisfied the more stringent "close nexus" test.  *See id.* at 12.

Accordingly, the Bankruptcy Court found that it had "related to" jurisdiction over the claims.

*See id.* at 20.

### 3.    The Movants' Appeal Does Not Provide Substantial Ground for Difference of Opinion

This Court agrees with the Bankruptcy Court that it is not necessary to determine which

test applies in these cases because they easily satisfy the "close nexus" test.  Accordingly, there

is no "substantial ground for difference of opinion" over whether the Bankruptcy Court has

subject-matter jurisdiction over LBHI's claims.  28 U.S.C. § 1292(b).  Thus, even assuming that

the other § 1292(b) criteria were satisfied here, leave to appeal the Order would not be

appropriate.

8

LBHI's claims satisfy the first part of the "close nexus" test because they affect the execution and administration of the confirmed bankruptcy plan. *See Savoy Senior Hous. Corp.*, 401 B.R. at 597. LBHI's claims seek indemnification for multibillion-dollar debts that LBHI owes the GSEs, debts that have been allowed under the plan. *See* Order at 5. LBHI's settlement agreements with the GSEs expressly require the GSEs to assist LBHI in bringing indemnification claims against loan sellers such as the Movants. *See id.* at 5 n.10. Furthermore, because LBHI is in liquidation, any amount that LBHI recovers from the Movants will be used to pay its creditors. *See id.* at 19. In short, LBHI's claims are directly tied to allowed claims under its bankruptcy plan and will have a direct effect on the amount of money available to be distributed to its creditors. Under similar circumstances, courts in this District have found that the first part of the "close nexus" test was satisfied. *See, e.g.*, *ResCap I*, 519 B.R. at 600; *In re Refco*, 628 F. Supp. 2d at 443; *Krys*, 2008 WL 4700920, at *6.[5]

---

[5]     In *ResCap I*, for example, as here, the debtor in a liquidation proceeding had purchased mortgage loans from a number of entities, packaged them into securities, and sold them to investors. *See* 519 B.R. at 595–96. The investors asserted claims against the debtor for misrepresentations relating to the securities, and the debtor sued the loan sellers for indemnification of the investors' claims. *See id.* The bankruptcy court found that the close nexus test was satisfied because "any funds recovered [would] be distributed to the creditors of the estate." *Id.* at 600.

The Movants argue that *ResCap I* is distinguishable because the claims in that case were filed prior to the bankruptcy plan's "effective date." *See* Movants Appeal Reply Mem. of Law at 10. This argument fails. The claims at issue in that case (most of them, anyway) were filed *after* the date that the bankruptcy court entered an order confirming the liquidation plan. *See* 519 B.R. at 596–97. The opinion in *ResCap I* is not clear whether the *effective date* of the plan had passed at the time that the claims were filed, but there is no indication that the effective date factored into the court's analysis; on the contrary, the court recognized that its subject-matter jurisdiction had arguably shrunk post-confirmation and, accordingly, applied the "close nexus" test to the claims. *Id.* at 600.

Additionally, in other cases, courts have held that the "close nexus" test was satisfied when plaintiffs brought adversary proceedings against *debtors* for indemnification or contribution relating to third-party claims. *See, e.g.*, *Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11-CV-1914, 2011 WL 3628852, at *4 (S.D.N.Y. Aug. 17, 2011) (collecting cases); *In re AOG Entm't, Inc.*, 569 B.R. 563, 578–79 (Bankr. S.D.N.Y. 2017) ("Courts addressing the question have concluded that an indemnification claim triggered by a post-confirmation lawsuit that is payable from the assets available for distribution to the creditors under the plan bears a 'close nexus' to the plan and satisfies requirements for post-confirmation, 'related to' jurisdiction."). LBHI's claims present the reverse situation: the debtor is suing, rather than being sued, for indemnification, and the claims, if successful, will result in more, not fewer, assets available to be distributed to creditors. But this distinction makes no difference: in both situations, the claims at issue could directly alter the amount of funds available in the estate.

The Movants argue that by focusing on the potential of LBHI's claims to affect the distributions to its creditors, the Bankruptcy Court actually applied the "conceivable effects" test, not the more stringent "close nexus" test. Movants' Appeal Mem. of Law at 21. This argument lacks merit. The "conceivable effects" test is considerably broader than an analysis of whether a claim will affect distributions to creditors. *See SPV Osus Ltd.*, 882 F.3d at 339 (an action has a conceivable effect on a proceeding if the claim could "*in any way* impact[] upon the handling and administration of the bankrupt estate," including altering the debtor's "options" or "freedom of action" (emphasis added)). Claims that "bring into question the very distribution of the estate's property" bear a nexus to the bankruptcy proceeding "*[b]eyond* merely having [a] 'conceivable effect'" on it. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (emphasis added). On the other hand, an analysis of whether a claim would affect distributions to creditors is an appropriate, and common, inquiry when applying the "close nexus" test. *See, e.g.*, *In re Kassover*, 448 B.R. at 632 & n.70 (collecting cases); *see also, e.g.*, *ResCap I*, 519 B.R. at 600; *In re Refco*, 628 F. Supp. 2d at 443; *Krys*, 2008 WL 4700920, at *6. The Bankruptcy Court, therefore, did not err by focusing on this factor in its analysis.

In any event, the basis for "related to" jurisdiction in these cases is not only that any damages that LBHI recovers will benefit its creditors, but also that the cases arise directly out of allowed claims under LBHI's bankruptcy plan. Because LBHI seeks indemnification for its settlements with the GSEs, the amount that LBHI will be able to recover from the Movants will depend, in large part, on the amount that LBHI owes the GSEs.[6] This is not a case, therefore, in which a debtor's claims would benefit an estate but are factually unrelated to the debtor's

---

[6]     Specifically, LBHI's settlements with the GSEs assessed damages for each individual loan that was contained in the securities that LBHI sold to the GSEs. *See* Order Approving Settlement Agreement, No. 18-MC-392, Dkt. 22-5. LBHI's recovery from the Movants, therefore, could be limited to those loans that the GSE settlements cover.

bankruptcy proceeding; rather, the factual basis for LBHI's claims is closely tied to its bankruptcy plan and to other plan-related documents.

As to the second part of the "close nexus" test, LBHI's Bankruptcy Plan "provide[s] for the retention of jurisdiction" over these cases. *Savoy Senior Hous. Corp.*, 401 B.R. at 597.  The Plan states that "the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to," the bankruptcy case, in order "[t]o determine any and all adversary proceedings, applications, and contested matters related to" the case, Plan § 14.1(b), and in order "[t]o hear and determine any actions brought to recover all assets of [LBHI] and property of the estates," *id.* § 14.1(k).  The Plan also "fully preserve[s] to the fullest extent permitted by applicable law" LBHI's "rights to assert or prosecute Litigation Claims for reimbursement, indemnification, recoupment or any other similar right," *id.* § 8.14(b), and it retains all "Litigation Claims . . . that [LBHI] had prior to" the Plan's effective date, *id.* § 13.8.  As defined by the Plan, "Litigation Claims" include any and all "[c]laims," as that term is defined by the Bankruptcy Code, whether those claims are "fixed or contingent, matured or unmatured."  *Id.* §§ 1.17, 1.22, 1.102.

"[W]here [a] confirmed plan includes broad jurisdictional retention provisions, 'the Bankruptcy Court's post-confirmation jurisdiction is as broad as the statutory grant—that is, it extends to all proceedings related to the bankruptcy.'"  *In re Ionosphere Clubs Inc.,* No. 98-CV-9112A, 1999 WL 717291, at *3 (S.D.N.Y. Sept. 15, 1999) (quoting *In re Chateaugay Corp.*, 213 B.R. 633, 638–39 (S.D.N.Y. 1997)); *see also Krys*, 2008 WL 4700920, at *8.  Because LBHI's claims fall within federal "related to" jurisdiction, those claims fall within the Plan's jurisdictional provisions.  Several courts in this District have found that this part of the "close nexus" test was satisfied based on language similar to that in LBHI's Plan.  *See, e.g.*, *In re*

*Residential Capital, LLC*, 527 B.R. 865, 871 (S.D.N.Y. 2014) (hereinafter *ResCap II*); *ResCap I*, 519 B.R. at 600; *Krys*, 2008 WL 4700920, at *6, *8.

The Movants argued to the Bankruptcy Court that the Plan does not provide for jurisdiction over LBHI's claims because, in their view, the Plan preserves only those claims that existed prior to the Plan's effective date (whereas LBHI's claims were filed after that date). *See* Order at 16.  The Bankruptcy Court properly rejected this argument.  *See id.* at 16–18. Under contract law, an indemnification claim is deemed to arise contingently "at the time the indemnification agreement is executed."  *In re Manville Forest Prod. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000).  Although the claim does not mature, and may not be asserted, until a covered loss occurs, it "arises" at the time of the execution of the relevant agreement.  *See id.*  Thus, LBHI's claims arose prior to the Plan's effective date.  The claims fall within the terms of the Plan, as the Plan preserves all claims, whether "fixed or contingent, matured or unmatured," existing as of the Plan's effective date, Plan § 1.17, and defines "claims" by reference to the Bankruptcy Code, *id.* § 1.22.  The Code provides that a "claim" is any "right to payment, whether or not such right is . . . fixed, contingent, matured, [or] unmatured."  11 U.S.C. § 101(5)(A); *see also SPV Osus Ltd.*, 882 F.3d at 341 ("[A]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred.").  Accordingly, LBHI's claims were preserved by the Plan.[7]

---

[7]  The Movants also argue that the Plan does not provide for jurisdiction over LBHI's claims because it does not reference the claims in express terms.  *See* Movants' Appeal Mem. of Law at 22; Order at 14.  This argument lacks merit.  As one court stated when rejecting a similar argument, the Movants fail to "cite any caselaw requiring that the [Plan's] retention of jurisdiction provision include an express reference to the particular cause of action being asserted, and the broad language in the catch-all provision clearly evidences the parties' intent to preserve post-confirmation federal jurisdiction to the maximum extent permissible under the statute."  *Krys*, 2008 WL 4700920, at *9; *see also, e.g., ResCap II*, 527 B.R. at 871; *ResCap I*, 519 B.R. at 600.

For all the foregoing reasons, there is no substantial ground for a difference of opinion that the Bankruptcy Court has subject-matter jurisdiction over LBHI's claims. Accordingly, leave to appeal the Order on these grounds is denied.

### C.   Leave to Appeal the Bankruptcy Court's Venue Ruling Is Denied

Although the Bankruptcy Court's ruling as to venue arguably provides a "substantial ground for difference of opinion," the Movants' appeal does not involve a "controlling question of law," would not "materially advance the ultimate termination of the litigation," and would have a negative impact on judicial economy. 28 U.S.C. § 1292(b). Accordingly, leave to appeal the venue ruling is not warranted here.

### 1.   The Applicable Law

An adversary proceeding "related to" a bankruptcy case may ordinarily "be commenced in the district court in which [the bankruptcy] case is pending." 28 U.S.C. § 1409(a). This "presumption in favor of venue in the home bankruptcy court dissipates," *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 770 (S.D. Tex. 1986) (footnote omitted), however, if the adversary proceeding is "based on a claim arising after the commencement of [the bankruptcy] case from the operation of the business of the debtor," 28 U.S.C. § 1409(d). In that circumstance, the proceeding may be brought only in the district court "in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." *Id.* Put differently, if the exception set forth in 28 U.S.C. § 1409(d) applies, "the debtor is exposed to liability in any court where the controversy might be heard as if the debtor were an ordinary citizen." *In re Cont'l Air Lines, Inc.*, 61 B.R. at 770; *see also id.* at 770 n.25.

The case law interpreting § 1409(d) is sparse. Only one Court of Appeals has ruled on the provision, and that was more than 30 years ago. *See In re B & L Oil Co.*, 834 F.2d 156, 159

(10th Cir. 1987).  Very few district courts and only a handful of bankruptcy courts have ruled on the issue.[8]  In the precedent that does exist, courts have distinguished between claims "concerning the administration of the estate," for which venue lies in the district of the bankruptcy proceeding, and claims relating more broadly to the debtor's day-to-day business, which are treated as ordinary civil claims subject to nonbankruptcy venue rules.  *In re Eagle-Picher Indus., Inc.*, 162 B.R. at 142; *see also, e.g.*, *In re PermaLife Prod., LLC*, 432 B.R. at 513; *In re Britt Airways, Inc.*, 169 B.R. at 535.  These courts have reasoned that treating the debtor's post-bankruptcy, business-related claims like those of an ordinary citizen "encourage[s] entities to engage in business with [the debtor] after bankruptcy is filed."  *In re All Am. of Ashburn, Inc.*, 49 B.R. at 928 n.3; *see also In re Cont'l Air Lines, Inc.*, 61 B.R. at 770.

## 2.     The Bankruptcy Court's Decision

The Bankruptcy Court found that § 1409(d) did not apply to LBHI's claims.  *See* Order at 23–26.  The Court reasoned that LBHI's claims could not have arisen "from the operation of [its] business" because the claims were filed at a time when LBHI "[was] no longer operating in the mortgage sale and securitization business" but, rather, was in the process of liquidating.  *Id.* at 25.  The Court also held that LBHI's claims did not arise "after the commencement of" the bankruptcy proceeding because indemnification claims "arise," as a matter of law, at the time

---

[8]     *See, e.g.*, *In re Nutri/System, Inc.*, 159 B.R. 725, 727 (E.D. Pa. 1993); *In re Cont'l Air Lines, Inc.*, 61 B.R. at 770; *In re PermaLife Prod., LLC*, 432 B.R. 503, 513 (Bankr. D.N.J. 2010); *In re Allegheny Health, Educ. & Research Found.*, 233 B.R. 671, 681 (Bankr. W.D. Pa. 1999); *In re Britt Airways, Inc.*, 169 B.R. 533, 534 (Bankr. D. Del. 1994); *In re Geauga Trenching Corp.*, 110 B.R. 638, 639 (Bankr. E.D.N.Y. 1990); *In re Eagle-Picher Indus., Inc.*, 162 B.R. 140, 142 (Bankr. S.D. Ohio 1993); *In re All Am. of Ashburn, Inc.*, 49 B.R. 926, 926 (Bankr. N.D. Ga. 1985); *In re Nat'l Sugar Ref. Co.*, 23 B.R. 726, 727 (Bankr. S.D.N.Y. 1982).

A few other cases have addressed another venue provision, 28 U.S.C. § 1409(e), which contains language substantially similar to § 1409(d).  *See, e.g.*, *In re Pan Am Corp.*, 177 B.R. 1014, 1016 (Bankr. S.D. Fla. 1995); *SECA Leasing Ltd. P'ship v. Brandt*, 144 B.R. 381, 382 (N.D. Ill. 1992); *Luciano v. Maggio*, 139 B.R. 572, 575 (E.D.N.Y. 1992).

that the applicable indemnification agreements are signed. *Id.* at 26. Additionally, the Court

found that judicial economy counseled against applying the venue exception and, instead, in

favor of "permitting [LBHI's claims] to be resolved in one centralized forum by a Court

extremely familiar with" the underlying bankruptcy proceeding. *Id.*

### 3.   The Bankruptcy Court's Ruling Leaves Substantial Ground for Difference of Opinion

Reasonable minds could differ over whether LBHI's claims arise from the operation of

its business. On the one hand, the claims arise out of indemnification agreements that were

executed as part of a purchase of mortgage loans, which was a regular part of LBHI's pre-

bankruptcy business. *See* Order at 4–6. The merits of these claims could turn on facts relating to

LBHI's business operations, such as whether the loans complied with underwriting procedures

and whether LBHI reasonably relied on the Movants' loan-related representations. *See* Second

Am. Compl. Against Wintrust Mortgage Corp., Case No. 18-MC-392, Dkt. 1, Ex. 4.B ¶¶ 14–16,

29.[9] On the other hand, the claims seek indemnification for the GSE settlements, losses that

LBHI incurred post-bankruptcy. *See* Order at 4–6. Determining the measure of LBHI's

damages could turn on facts relating to the terms of the GSE settlements and of the orders

approving them—facts closely related to the administration of the bankrupt estate and having

little to do with LBHI's prior business operations. *See id.* In short, LBHI's claims involve facts

relating to both its pre-bankruptcy business operations and its post-bankruptcy estate

administration; reasonable minds could differ, therefore, over whether § 1409(d) applies to those

claims.

---

[9]      LBHI filed a separate complaint against each Movant, but each complaint contains substantially similar allegations. *See* LBHI's Appeal Mem. of Law at 5 n.3. The Court herein refers to the complaint against Wintrust Mortgage Corp., one of the Movants, as an example of LBHI's claims.

The fact that LBHI is in the process of liquidation makes this analysis even murkier. The Bankruptcy Court's decision suggested that § 1409(d) did not apply to LBHI's claims because LBHI brought those claims as part of the liquidation of its estate, rather than as part of its business operations. *See* Order at 25. Put differently, the Bankruptcy Court looked to LBHI's *purpose* in bringing those claims (which relates to the administration of its estate), rather than the *facts* underlying those claims (which relate, in part, to LBHI's prior business operations). *See id.* At least two other cases appear to have engaged in a similar analysis. *See SECA Leasing Ltd. P'ship*, 144 B.R. at 382 (holding that § 1409(e) did not apply because the claim at issue arose "solely from the liquidation process"; "[M]erely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted."); *In re PermaLife Prod., LLC*, 432 B.R. at 513 ("[T]he trustee's liquidation function is to be contrasted with and distinguished from the operation of business assets." (emphasis omitted)). But at least one other court has taken a different view, holding that the debtor's purpose in bringing the claim is "not determinative" of whether the claim arises from the debtor's business operations but, rather, that courts should look to whether the "facts and legal bases" underlying the claim have their roots in those operations. *In re B & L Oil Co.*, 834 F.2d at 159. In this Court's view, the former category of cases has the better argument. Unlike a reorganized debtor, a debtor in liquidation will never again be an ordinary corporate citizen; accordingly, the courts have little interest in encouraging third parties to do business with it by subjecting it to the nonbankruptcy rules of procedure. Nevertheless, the sparse and divided authority on this subject means that the question is not beyond debate.

For all these reasons, there is substantial ground for a difference of opinion over whether the Bankruptcy Court's ruling was correct in finding that § 1409(d) did not apply.

### 4.    The Movants' Appeals Do Not Raise a Controlling Question of Law

Regardless of whether the Bankruptcy Court's decision provides substantial ground for disagreement, the Movants' appeals would bog the Bankruptcy Court down in a protracted, fact-intensive analysis.  Because leave to appeal requires a "controlling question of law" that the reviewing court can decide "quickly and cleanly" without a careful "study [of] the record" or resolution of questions of fact, leave to appeal is not appropriate here.  *In re Facebook*, 986 F. Supp. 2d at 536.

When § 1409(d) applies, it requires that claims be brought in a district where they could have been brought "under applicable nonbankruptcy venue provisions."  28 U.S.C. § 1409(d). Assuming that federal subject-matter jurisdiction exists, the applicable nonbankruptcy venue provision is 28 U.S.C. § 1391, which states, in relevant part, that a civil action may be brought in a district in any state in which all defendants reside, 28 U.S.C. § 1391(b)(1), or in a district "in which a substantial part of the events or omissions giving rise to the claim occurred," *id.* § 1391(b)(2).  Thus, if the Movants were to prevail in their appeal, and this Court were to hold that § 1409(d) applies, the Court would still need to remand these cases to the Bankruptcy Court for it to consider how § 1391 applies to these cases.  The need for a remand, standing alone, counsels against granting leave to appeal.  *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996); *In re Facebook*, 986 F. Supp. 2d at 531–32.[10]

---

[10]    The Movants argue that if this Court granted leave to appeal, it could simply order supplemental briefing on the application of § 1391, thus avoiding a remand.  *See* Movants Appeal Reply Mem. of Law at 23–24.  But as a reviewing court, it would not be appropriate for this Court to preempt the Bankruptcy Court from deciding the matter in the first instance, particularly because the Bankruptcy Court is immeasurably more familiar with the record of the bankruptcy proceeding than this Court.

Furthermore, the application of § 1391 to these cases would require a complicated, fact-intensive analysis. Were the Court to apply § 1391(b)(1), it would need to determine where the Movants "reside" for purposes of venue. That could present difficult legal questions. In their briefs to the Bankruptcy Court, the parties spilled considerable ink arguing whether the Movants should be deemed to "reside" in all districts in the United States because the bankruptcy rules provide for nationwide service of process. *See* Adler Decl., Case No. 18-MC-392, Dkt. 2, Ex. 6 at 37–41; *id.* Ex. 8 at 25–26. This question does not appear to have an obvious answer. Likewise, were the Court to apply § 1391(b)(2), it would need to determine where the events or omissions underlying LBHI's claims occurred. That question also yields no easy answer, as courts consider several different factors to answer this question in indemnification cases, including the location where the indemnification contract was allegedly breached, "where the contract was executed, where it was negotiated, and where [the] parties performed pursuant to the contract." *Gramercy Advisors, LLC v. Ripley*, No. 13-CV-9070, 2014 WL 4188099, at *6 (S.D.N.Y. Aug. 25, 2014); *see also, e.g.*, *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166–67 (10th Cir. 2010). These facts are not immediately clear from the record before this Court. And because the Movants represent more than 70 different loan sellers, each of which presumably entered into separate indemnification agreements with LBHI, this analysis could be onerous and time-consuming.

For all these reasons, the Movants' appeals do not present a controlling question of law that would warrant leave to appeal.

5.      **The Movants' Appeals Would Not Materially Advance the Ultimate Termination of the Litigation**

Leave to appeal is also not appropriate because the Movants' appeals would prolong—not shorten—the time required until LBHI's claims can go to trial.

When a motion to dismiss for improper venue is granted, the district court must either dismiss the case or, "if it be in the interest of justice," transfer the case to a district where venue is proper.  28 U.S.C. § 1406(a); *see also, e.g.*, *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992).  Any dismissal must be without prejudice, in order to allow the plaintiff to refile the action in a proper venue.  *See Farmer v. Levenson*, 79 F. App'x 918, 921–22 (7th Cir. 2003) (collecting cases); 17 *Moore's Federal Practice: Civil* § 111.34 (2019).  Accordingly, if the Movants were to prevail both in their appeals and in the likely litigation over the application of § 1391, the remedy would be to make LBHI restart these cases in different districts.  That result would bring these cases no closer to trial; on the contrary, it would prolong the time required for pretrial matters, inasmuch as the Bankruptcy Court has already entered a coordinated scheduling order and ruled on pretrial motions.  *See* Order at 6–7.  Leave to appeal is ordinarily not appropriate under these circumstances.  *See, e.g.*, *In re Barsan Contractors*, No. 04-12362, 2010 WL 3907116, at *7 (D.N.J. Sept. 30, 2010) ("A mere change in forum would not materially advance termination of litigation of the [plaintiff's claims].").

Balanced against the cost of starting these cases anew at their current stage is the risk that the same result could occur after final judgments have been entered.  If the Movants lose these cases after they have been fully litigated and reduced to final judgments, the Movants could appeal the Bankruptcy Court's venue ruling.  If successful, that appeal would require vacatur of the judgments and either a transfer or a dismissal without prejudice, to allow the parties to start the cases anew in a proper venue.  *See, e.g.*, *S.E.C. v. Johnson*, 650 F.3d 710, 716 (D.C. Cir.

2011) (dismissing a case without prejudice for improper venue following a jury trial and entry of a final judgment); *U.S. for Use & Ben. of Harvey Gulf Int'l Marine, Inc. v. Maryland Cas. Co.*, 573 F.2d 245, 248 (5th Cir. 1978) (collecting cases in which "appellate courts have not hesitated to reverse for improper venue after the merits of the case have been decided").  If the litigation over LBHI's claims turns out to be protracted, the cost of starting anew following entry of judgment could be even higher than starting anew now.

That risk, however, is not a reason to grant leave for an interlocutory appeal.  Every case in which pretrial motions are filed carries with it the risk that a higher court will, after the case has been adjudged and appealed, reverse a pretrial ruling, requiring the judgment to be vacated and the case remanded for a do-over.  That result would be no more costly for the Movants and LBHI than for the parties in any other complex, multi-defendant commercial dispute.  Given the judicial system's strong interest in finality and the Second Circuit's admonition to limit interlocutory appeals to "exceptional circumstances," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), that risk does not warrant granting leave to appeal.

For all these reasons, the Movants' appeals would not materially advance the ultimate termination of this litigation, and leave to appeal is not warranted here.

### 6.    Considerations of Judicial Economy Counsel Against Leave to Appeal

Even when the three § 1292(b) criteria for an interlocutory appeal are met, district courts retain "unfettered discretion" to deny leave to appeal if other factors counsel against it.  *In re Facebook*, 986 F. Supp. 2d at 530; *see also Klinghoffer*, 921 F.2d at 24.  Because the Movants' appeals would have a negative impact on judicial economy, this Court would not exercise its discretion to grant interlocutory review even if all three factors weighed in favor of it.

All of LBHI's claims are currently assigned to a single Bankruptcy Court, which has set them on a coordinated case-management schedule. *See* Order at 6–7. Given the complexities of these cases, coordinating pretrial matters before a single judge is clearly the most efficient way to proceed. If the Movants were to prevail in their appeal, it is unlikely that all of their claims would be properly venued in the same district. The Movants' appeal, therefore, risks derailing the Bankruptcy Court's coordinated pretrial schedule and causing the parties to incur substantial costs litigating these cases in different districts.

Furthermore, the Movants are only a subset of all of the Defendants that LBHI has sued for indemnification. It is not clear that the non-moving Defendants have preserved timely objections to venue; accordingly, it is possible that those parties have waived their right to contest venue. *See* Fed. R. Civ. P. 12(h)(1); *Miller v. Batesville Casket Co.*, 219 F.R.D. 56, 58 (E.D.N.Y. 2003). Thus, if the Movants were to prevail in their appeals, their cases could be transferred to different districts around the country, while LBHI's claims against the non-moving Defendants would remain in this District. That the Movants' appeal would not affect all similarly situated parties further counsels against granting leave to appeal. *See Primavera Familienstifung*, 139 F. Supp. 2d at 570 ("The elimination of a small number of plaintiffs out of a total of approximately fifty . . . does not satisfy the standard of materially advancing the ultimate termination of this litigation.").

In short, the Movants' appeals could result in hundreds of substantively identical claims being adjudicated in different districts across the country while others are adjudicated in this District's Bankruptcy Court. The judicial system has a strong interest in consolidating these cases in a single court, particularly when that court has institutional knowledge about LBHI that

could be critical in efficiently resolving the cases.  Accordingly, leave to appeal would not be an appropriate exercise of this Court's discretion, even if the required factors weighed in favor of it.

For all the foregoing reasons, the Movants' motions for leave to appeal the Bankruptcy Court's order are denied.

## II.    The Motion for an Immediate *De Novo* Review of the Bankruptcy Court's Order Is Denied

### A.    Introduction

Because the Bankruptcy Court is a specialized, Article I tribunal, Article III of the Constitution prevents it from entering final judgments in cases that do not fall within its "core" power.  *See Stern v. Marshall*, 564 U.S. 462, 476–77 (2011).  An Article I bankruptcy court may "hear" these sorts of "non-core" cases, but only an Article III district court may reduce them to final judgments.  *See id.*; *In re Petrie Retail, Inc.*, 304 F.3d 223, 228–29 (2d Cir. 2002); *In re U.S. Lines, Inc.*, 197 F.3d 631, 636 (2d Cir. 1999).  Accordingly, at the conclusion of a non-core case, the bankruptcy court must submit to the district court proposed findings of fact and conclusions of law, which the district court must review *de novo* before entering final judgment. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033; *Stern*, 564 U.S. at 476; *In re Petrie Retail*, 304 F.3d at 228; 1 *Collier on Bankruptcy* ¶ 3.03 (16th ed. 2019).

The Movants argue that these constitutional limitations prevent a bankruptcy court not only from entering a final judgment but also from adjudicating any questions relating to subject-matter jurisdiction in a non-core proceeding.  *See* Movants' De Novo Mem. of Law at 9–12.  In the Movants' view, only an Article III court may determine whether federal subject-matter jurisdiction exists over a non-core case.  *See id.* at 12–15.  Because LBHI's adversary proceedings against the Movants are (in the Movants' view) non-core matters, the Movants argue that the Bankruptcy Court lacked power to consider the subject-matter jurisdiction questions in

their pretrial motions.  *See id.* at 14–15.  Accordingly, the Movants argue that this Court should

make its own, *de novo* determination of whether subject-matter jurisdiction exists before these

adversary proceedings move forward.  *See id.*

### B.   The Bankruptcy Court Was Entitled to Determine Whether It Had Subject-Matter Jurisdiction over LBHI's Claims

The Movants' arguments are more academic than consequential.  As the Court has

explained, these cases easily satisfy the "close nexus" standard for "related to" subject-matter

jurisdiction pursuant to 28 U.S.C. § 1334(b).  *See supra* Part I.B.  Thus, even if the Court were to

review the Bankruptcy Court's Order *de novo*, the Movants' motions to dismiss for lack of

subject-matter jurisdiction would still be denied.

In any event, the Movants are incorrect that the Bankruptcy Court lacked authority to

adjudicate subject-matter jurisdiction.  The constitutional limitations discussed above prevent a

bankruptcy court only from entering a *final* judgment in a non-core proceeding; as to *non-final*

matters, the bankruptcy court has full power to enter all appropriate orders, subject to the district

court's review at the end of the case.[11]  Put differently, until a non-core bankruptcy case is ready

to be submitted to an Article III district court for *de novo* review and entry of final judgment, the

Article I bankruptcy court is entitled to enter any interlocutory rulings that are required.  Because

a denial of a motion to dismiss for lack of subject-matter jurisdiction is a non-final order, the

---

[11]      *See In re Anderson News, LLC*, No. 09-10695-CSS, 2015 WL 4966236, at *2 (D. Del. Aug. 19, 2015)
("Even if the Bankruptcy Court lacks constitutional authority to enter a *final* judgment on . . . [a non-core] claim,
there is no constitutional constraint preventing it from entering interlocutory orders . . . regarding that same claim."
(footnote omitted) (collecting cases)); *In re Synergy Acceptance Corp.*, No. C-14-4891 MMC, 2015 WL 3958155, at
*2 (N.D. Cal. June 29, 2015) ("A bankruptcy court hearing a non-core proceeding may . . . enter 'interlocutory
decisions and orders on non-core issues,' and such decisions and orders 'need not be submitted to the district
court,' as 'only the power to enter final judgment is abrogated.'" (citations omitted) (quoting *In re Bellingham Ins.
Agency, Inc.*, 702 F.3d 553, 565 (9th Cir. 2012); *In re Castro*, 919 F.2d 107, 108–09 (9th Cir. 1990))); *In re
Trinsum Grp., Inc.*, 467 B.R. 734, 738 (Bankr. S.D.N.Y. 2012) ("[B]oth before and after *Stern v. Marshall*, it is clear
that the bankruptcy court may handle all pretrial proceedings, including the entry of an interlocutory order
dismissing fewer than all of the claims in an adversary complaint . . . ."); *In re Lehman Bros. Holdings Inc.*, 469
B.R. 415, 424 & n.5 (Bankr. S.D.N.Y. 2012) (collecting cases).

Bankruptcy Court was entitled to enter the Order without immediate review by this Court.[12]
Absent leave to appeal—which this Court has denied, *see supra* Part I.B—the Movants have no
right to interlocutory review of the Order.[13]

Additionally, this motion amounts to nothing more than a question of timing.  Assuming
that LBHI's claims are non-core matters, this Court will review the Bankruptcy Court's findings
after the Bankruptcy Court fully hears these cases and submits proposed findings of fact and
conclusions of law in order for this Court to enter final judgment.  *See* 28 U.S.C. § 157(c)(1); *In
re Petrie Retail*, 304 F.3d at 228.  At that time, this Court will be required to review the matter
*de novo*, without deference to the Bankruptcy Court's proposed findings of fact and conclusions
of law.  *See* Fed. R. Bankr. P. 9033(d); *Arkison*, 573 U.S. at 34; *In re BP RE, L.P.*, 735 F.3d 279,
282 (5th Cir. 2013); *Cent. Vermont Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir.
2003); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166–67 (2d Cir. 2000); 1 *Collier on
Bankruptcy* ¶ 3.03[3] (16th ed. 2019).  The question, then, is whether the Movants are entitled to
an *immediate* review of the Bankruptcy Court's ruling or whether they must wait until the case

---

[12]     *See Rein*, 162 F.3d at 756 ("[D]enials of motions to dismiss for jurisdictional reasons cannot ordinarily be
the subject of interlocutory appeals."); *In re Trinsum Grp., Inc.*, 467 B.R. at 738 ("Unless and until the bankruptcy
court enters proposed findings of fact and conclusions of law . . . appellate review by the district court of
interlocutory orders is limited to discretionary review . . . ."); *In re FYM Clinical Lab., Inc.*, 1994 WL 665960, at *1
("It is well settled that denial of a motion to dismiss a bankruptcy petition is an interlocutory order."); *N. Fork Bank*,
207 B.R. at 389 ("Because the Order denying [the] motion to dismiss the action for lack of subject matter
jurisdiction did not terminate the bankruptcy proceeding or even the adversary proceeding, this Court does not
consider such an order as a final determination.").

[13]     The Movants quote a number of U.S. Supreme Court opinions in support of their argument that Article I
courts cannot adjudicate subject-matter jurisdiction in non-core proceedings.  These cases, however, pertain to the
entry of *final* judgments by the bankruptcy court; they do not apply to the entry of a non-final judgment such as the
Order.  *See Stern*, 564 U.S. at 501 (discussing the Article III "limitations on the authority of bankruptcy courts to
enter *final* judgments" (emphasis added)); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941
(2015) ("In *Stern,* the Court held that Article III prevents bankruptcy courts from entering *final* judgment on
[certain] claims . . . ." (emphasis added)); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 28 (2014) (*Stern* held
that "Article III of the Constitution prohibits bankruptcy courts from *finally* adjudicating certain . . . claims"
(emphasis added)).

has been fully litigated to obtain that review.  Consistent with the black-letter principle that only

final judgments are appealable as of right, the Movants are not entitled to a *de novo* review until

the end of their cases.[14]

    In short, the motion to subject the Order to an immediate *de novo* review is denied.

## CONCLUSION

    For all the foregoing reasons, the motions for leave to appeal and for an immediate *de*

*novo* review of the Bankruptcy Court's Order are DENIED.  The Clerk of Court is directed to

docket this opinion in Case Nos. 18-MC-392, 18-CV-8986, 18-CV-9006, and 18-CV-9176.  The

Clerk is also directed to terminate all open motions in these cases and mark them as CLOSED.

**SO ORDERED.**

Date:  **May 8, 2019**           **VALERIE CAPRONI**
       **New York, New York**       **United States District Judge**

---

[14]     The Movants argue that allowing LBHI's claims to move forward in the Bankruptcy Court without a *de novo* review of the subject-matter jurisdiction question would run afoul of the principle that "[s]ubject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits'" of a case. *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998)); *see also* Movants' De Novo Mem. of Law at 13–15; Movants' De Novo Reply Mem. of Law at 3–4. This argument fails.  The question of subject-matter jurisdiction *has* been addressed in these cases—by the Bankruptcy Court.  As this Court has explained, no constitutional principle prevented the Bankruptcy Court from making that determination and from doing so without this Court's immediate review.  The Movants point to no principle of law that requires a *district* court to resolve subject-matter jurisdiction before a *bankruptcy* court can move to the merits of a claim.

     The Movants also argue that denying their motion would "effectively block[]" their right to *de novo* review because this Court would, at the time of the entry of the final judgment, review the Bankruptcy Court's fact-finding under a "clearly erroneous" standard.  Movants' De Novo Mem. of Law at 15; *see also* Movants' De Novo Reply Mem. of Law at 7–8.  That is not correct.  If LBHI's claims are non-core matters, this Court will be required to conduct a *de novo* review both of the Bankruptcy Court's findings of fact and of its conclusions of law.  *See* Fed. R. Bankr. P. 9033(d); *Arkison*, 573 U.S. at 34; *In re BP RE, L.P.*, 735 F.3d at 282; *In re Crysen/Montenay Energy Co.*, 226 F.3d at 166–67; *Cent. Vermont Pub. Serv. Corp.*, 341 F.3d at 190; 1 *Collier on Bankruptcy* ¶ 3.03[3] (16th ed. 2019).